Novak, Respondent, vs. Zastrow, Appellant.

*December 4, 1929—January 7, 1930.*

For the appellant there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Harold M. Wilkie.*

For the respondent there was a brief by *Lehner & Lehner* of Princeton, and oral argument by *Philip Lehner.*

OWEN, J.   The defendant and his wife live in the city of Monroe.   On the 19th day of November, 1928, his wife drove to Madison in his automobile to bring her mother to the Zastrow home.   On the way back from Madison there was a collision between the car of plaintiff and the car driven by Mrs. Zastrow.   The verdict of the jury found facts upon which the plaintiff was entitled to recover if Mrs. Zastrow was the agent of the defendant in driving the car, and judgment was rendered in favor of the plaintiff.   Although the sufficiency of the evidence establishing the facts upon which liability is predicated is challenged upon this appeal, it will be unnecessary for us to review the evidence in this respect, as we conclude that Mrs. Zastrow was not the agent of the plaintiff, for which reason the judgment must be reversed.

The question of whether Mrs. Zastrow was the agent of her husband, the defendant, was left for the court to decide. The court first decided that Mrs. Zastrow was not the agent of her husband, but after its attention was called by counsel to *Enea v. Pfister,* 180 Wis. 329, 192 N. W. 1018, and *Borger v. McKeith,* 198 Wis. 315, 224 N. W. 102, it made a finding that "at the time of the collision described in the

complaint, one Myrtle Zastrow was driving the automobile owned by the defendant, Douglas W. Zastrow, as his agent and in pursuit of his business and within the scope of her authority," and then entered judgment in favor of the plaintiff.

The evidence shows that the car was owned by the defendant; that he had purchased the same before his marriage; that he permitted his wife to take it for the purpose of going to Madison and bringing her mother to the Zastrow home, and that the trip was made for no other purpose. In view of this evidence, showing without dispute the circumstances under which the trip was made, the rule of *Enea v. Pfister, supra,* applied in *Borger v. McKeith, supra,* where the evidence bearing on the question of agency was meager and in dispute, has no application. The rule of *Enea v. Pfister,* which raises a presumption that a car is being used in the business of the owner, was adopted merely because of the exigencies of justice and to cast the burden on the one in possession of the facts, but the reason of the rule disappears and the rule itself loses its probative force where the evidence is undisputed concerning the purposes for which the car was being used at the time of the accident.

We have here, then, a plain question of law, whether the wife is acting as the agent of her husband when she takes his car and goes after her mother to bring her to the family home. The law presumes that a wife has authority to pledge the credit of her husband for necessaries, but, further than this, the question of whether at any given time she is acting as his agent is to be determined by the same principles which apply to any other parties. The ordinary rules as to actual, apparent, or ostensible agency must be applied. 13 Ruling Case Law, p. 1178. It appears that the mother was desirous of visiting at Monroe—at the Zastrow home as well as with another of her daughters who resided there. No legal duty rested upon the defendant, or his wife for

that matter, of furnishing her transportation from Madison to Monroe. Certainly no such duty rested upon the defendant. If such duty rested upon the defendant, and he performed that duty by directing his wife to take his car and bring her mother to Monroe, then it would quite plainly appear that in the performance of that duty the wife was acting as her husband's agent. In the absence of any such duty it cannot be said that upon the trip the wife was prosecuting the husband's business. Plainly, an implied or ostensible agency cannot be spelled out of the circumstances. Of course the husband might have assumed the responsibility of providing this transportation, and if he had done so, and directed or requested his wife to take his car and bring her mother to Monroe, then an express agency would have resulted. However, there is no evidence of any such request or direction. The situation is merely one where the mother desired to visit her daughters in Monroe. One of her daughters, the defendant's wife, took the defendant's car and went after her. This was a courtesy on the part of the defendant and his wife extended to the mother. The defendant furnished the car, his wife drove it, thus providing the mother with the means of accomplishing her desires. It was a combined kindness, a courtesy, a gratuity, extended by the husband and his wife. It was no part of the defendant's business. It resulted in the discharge of no obligation which he owed. In driving the car the defendant's wife was simply performing a service for her mother. She was not in the prosecution of her husband's business so that he became bound for her acts or liable for her negligence.

Counsel for respondent stresses the fact that Mrs. Zastrow did some shopping in Madison. This is based upon the testimony of her mother, who, being questioned, answered as follows: "Q. She came to Madison to get you? A. Yes, sir. Q. She spent some time in Madison? A. We did some shopping." It will be noted that it was not stated

who the shopping was for, whether for the mother or the daughter. However, it is argued as though the shopping was done by Mrs. Zastrow, and that, if so, she was engaged in her husband's business and acting as his agent. To sanction such a proposition would foster a source of domestic disturbance seismic in its possibilities. Granting that the shopping was for the necessaries of the wife, granting that the husband is liable to pay therefor, and granting that she had authority to pledge his credit,—that does not mean that while the wife is doing her own shopping she is acting as her husband's agent. To say that it is the business of the husband to select his wife's gowns and bonnets, and that it is her duty to wear apparel of his choosing, is to suggest a bondage which the temerity of man has not suggested and to which the spirit of woman has not submitted within the memory of the living. Such thralldom has not had practical existence in modern times if it were ever painted in legal fiction. Granting all of the assumptions of counsel to be true, we can see no theory upon which it can be held that Mrs. Zastrow was acting as the agent of the husband at the time of the accident, in the absence of which relation the defendant sustained no liability.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the complaint.

CROWNHART, J. (*dissenting*). It is admitted that, with appellant's permission and consent, his wife used his car to get her mother at Madison and transport her to the appellant's home, to be the guest of himself and wife. On the trip the wife had an accidental collision with another automobile, and the husband was sued for the resulting damage caused thereby. The fact that the wife was in possession of the husband's car at the time was presumptive evidence that she was the agent of the husband in driving the car. *Enea v. Pfister,* 180 Wis. 329, 192 N. W. 1018. It

placed the burden on the appellant of proving the contrary by evidence so clear and convincing as to overcome that presumption or inference. *Borger v. McKeith,* 198 Wis. 315, 224 N. W. 102.

The trial court found as a fact that the presumption had not been rebutted, and found that the wife was the agent of the husband in the operation of the car. On what evidence does this court reverse the finding of the trial court? On the testimony of the wife that she had no other purpose on the trip except to get her mother, and the testimony of the husband that his wife had no business of any kind to transact for him on the trip. That is the sole evidence relied on as showing there was no agency for the husband on the part of the wife in using his car. But the facts are undisputed. The wife, authorized by her husband, took his car to transport his mother-in-law to his home, to be the family guest. I contend that this was the husband's business and so recognized by him.

The relation of husband and wife in society is well recognized, and the duty of the husband flowing from that relation is well recognized in law. The husband assumes the duty of furnishing the wife a home suitable to his condition in life and their social relations. That duty plainly entails the duty of the husband to entertain guests in the home as is customarily done in his social station. The parents of both husband and wife are presumed to be welcome guests, to whom the husband and wife assume the usual tender and filial care. That includes the reasonable and customary transportation under the circumstances. In this case the mother of the wife was a nurse, working for her living. She was an invited guest of the family. The husband, with the instincts of a gentleman and a husband, placed his car at his wife's disposal to transport the guest from Madison to Monroe. This attention to his mother-in-law was no less his duty than it would have been had it been his mother who

was the invited guest. The appellant does not deny the facts. He denies that it constituted *business,* and that seems to be the distinction made in the opinion of the court. If the wife had purchased groceries for the entertainment of the guest, that would have been the husband's *business,* and he would have been the responsible party. To the credit of the appellant it should be said he did not testify that the trip was not made on his behalf or at his desire, but that "she [the wife] had no *business* of any kind to transact for me." But the inference, I think, is conclusive as found by the trial court. The wife, acting for the husband, was engaged in performing a social obligation primarily resting on the husband, and which he cheerfully recognized and accepted.

The marriage relation has not yet degenerated into a mere business compact. It still is a sacred status in society, of the highest importance to the general welfare of the state. The mutual obligations of husband and wife may be difficult of definition, but they are well understood and should not be depreciated by decisions of the courts. Modern statutes have done much to dignify the status of married women, and have released them from the bondage of the common law. The statutes declare that women have certain "rights and privileges," but they in no way nullify the marriage relation as a social institution.

I respectfully dissent from the opinion of the court.