CONAN, Appellant, vs. A. C. ALLYN & COMPANY, Respondent.

CHARNEY, Appellant, vs. A. C. ALLYN & COMPANY, Respondent.

*May 31—October 11, 1932.*

36

For the appellants there were briefs by *Sydney C. Charney*, attorney, and *W. C. Zabel* of counsel, both of Milwaukee, and oral argument by *Mr. Charney*.

For the respondent there were briefs by *Fawsett & Shea*, attorneys, and *Charles F. Fawsett* and *C. F. Mikkelson* of counsel, all of Milwaukee, and oral argument by *Mr. Mikkelson*.

The following opinion was filed June 20, 1932:

NELSON, J. In the first action, hereinafter called the Conan case, the plaintiff sued to recover the sum of $2,000 paid for two bonds issued by Great Lakes Terminal Warehouse Company of Toledo, on the ground that she was induced to purchase them by misrepresentations and fraud, which purchase she had duly rescinded prior to the bringing of the action.

In the second action, hereinafter called the Charney case, the plaintiff sued to recover the sum of $100, the consideration paid by her for one Great Lakes Terminal Warehouse Company bond, on the ground of false representations.

The defendant is a corporation engaged in the sale of stocks, bonds, and other investment securities. At all the times herein mentioned, Mae Nee was employed by the defendant as one of its authorized representatives and agents.

Hattie L. Conan, at the time of the transaction of which she complained, was a widow of the age of sixty-four years and was dependent for her support upon the interest income

from her investments and the rent from a duplex house. Prior to the 21st day of November, 1927, she had purchased securities from the defendant through Miss Nee as its agent. She was inexperienced in business matters and necessarily relied upon statements made by agents of investment companies who sold securities to her. On the date mentioned Mrs. Conan was the owner of two Webster Building Corporation bonds of the par value of $2,000 which she had theretofore purchased from the defendant and which, at the time mentioned, had been called at 103½. On or about the date mentioned Miss Nee called on the plaintiff and, after a rather extended interview, induced her to exchange her two Webster bonds for the two Great Lakes bonds and $70 in cash. The Great Lakes bonds sold to Mrs. Conan were in fact "general mortgage bonds," were part of an issue of $850,000 but were in fact second and subsequent to an issue of $2,250,000 secured by a first mortgage. The plaintiff claimed and the trial court found that Miss Nee, in order to induce the plaintiff to purchase the two Great Lakes bonds, represented that said bonds were first-mortgage bonds; that the business was a going business and was earning more than enough to meet its interest requirements; that the bonds were better than the Webster bonds, which were then being called; that they were adequate security for the $2,000 invested by the plaintiff, and that they were a first-class investment for a person of plaintiff's financial status. The court further found that the said representations were false in that said bonds were secured by a second mortgage which was subject to a first mortgage; that they were not as good as the Webster Corporation bonds in that they were secured by a second mortgage; that they were not adequate security for the $2,000 invested by the plaintiff by reason of the large first mortgage and because the warehouse was uncompleted and not a going concern; that they were not a first-class investment

by reason of the fact that they were subject to the first mortgage; that they were not first-class bonds and were not a safe investment because of the entire lack of earnings at the time the bonds were sold. The court further found that prior to the commencement of the action and upon discovering the fraud, plaintiff duly tendered the two Great Lakes bonds to the defendant and demanded the return of the consideration paid, which demand was refused by the defendant. Judgment was entered in favor of the plaintiff for the sum of $2,000 and costs.

The issues in the Charney case were substantially the same as in the Conan case. Rachel W. Charney is a daughter of Mrs. Conan and in November, 1927, was living with her mother. At that time she was the owner of a one hundred dollar Livingston Baking Company bond quoted at $104. This bond was exchanged for a Great Lakes bond of like denomination and $4 in cash.

On appeal to the circuit court both actions were reviewed on the records. In the Conan case the circuit court held that the proof was insufficient to measure up to the proof required in fraud cases; that is to say, fraud was not shown by clear and satisfactory evidence. In the Charney case the circuit court did not pass upon the sufficiency of proof but reversed the judgment of the civil court on the ground that plaintiff's proof failed to show that the value of the bond purchased by her was less at the time of the sale than the amount actually paid; the court held that because her action was one for damages rather than one for the return of the consideration paid, she could not recover.

It is well established that 'on an appeal from the civil court of Milwaukee county to the circuit court, where the trial had been had before the court without a jury, the findings of the trial court should not be set aside unless such findings are against the clear preponderance of the evidence.

*Pabst B. Co. v. Milwaukee L. Co.* 156 Wis. 615, 146 N. W. 879; *Mechanical A. Co. v. A. Kieckhefer E. Co.* 164 Wis. 65, 159 N. W. 557; *Harper v. McMahon,* 167 Wis. 388, 167 N. W. 431; *Foster v. Bauer,* 173 Wis. 231, 180 N. W. 817; *Rauch v. Bensman,* 200 Wis. 36, 227 N. W. 253.

A careful consideration of all of the testimony found in the record convinces us that the findings of the civil court cannot be said to be against the clear preponderance of the evidence. We deem it unnecessary to review the testimony other than that relating to the representation that the bonds were first-mortgage bonds. If the bonds were represented to be first-mortgage bonds when in fact they were not, that representation alone would be sufficient to support the charge of fraud, to justify rescission, and to uphold the judgment.

As to the representation that the bonds were first-mortgage bonds Mrs. Conan testified that she told Miss Nee that she wanted only first-class securities; that she bought the bonds for first-mortgage bonds; that Miss Nee stated that the bonds were secured by first-mortgage bonds on the property of the company and that they were first general mortgage bonds.

Mrs. Charney also testified that Miss Nee stated that the mortgage was a first mortgage, a first general mortgage. The following testimony of Miss Nee is not without some significance:

"*Q.* Did you tell Mrs. Conan that these Great Lakes Terminal bonds had been purchased by your house? *A.* Yes, sir.

"*Q.* Did you tell her they were first-class securities? *A.* Yes, sir.

"*Q.* You told her that? *A.* Yes, sir.

"*Q.* Did you tell her they were a first-mortgage lien upon the property of the company? *A.* I did.

"*Q.* You did? *A.* Yes, sir.

"*Q.* Did you tell her that the building had been completed?

"Mr. Mikkelson (interrupting) : What bonds are you referring to? *A.* No answer.

"*Q.* The question was whether you told Mrs. Conan? *A.* Yes.

"*Q.* These were first-mortgage bonds? *A.* No, that there was a first-mortgage bond on them.

"Mr. Zabel: I object to counsel coaching his witness, leading her like a blind child."

With all of the testimony in mind we cannot say that the finding of the civil court that the bonds were represented to be first-mortgage bonds is against the clear preponderance of the evidence. We therefore conclude that the circuit court erred in setting aside that finding. This being our view, we deem it unnecessary to decide whether some or all of the other representations which the trial court found to have been made were representations of existing facts or merely expressions of opinion.

The defendant earnestly contends that the plaintiff failed to prove any damages because she offered no evidence tending to prove that at or about the time of the sale the bonds were worth less than the price paid for them. While the action is one at law for damages, it is clearly one for the recovery of the purchase price, after the purchase had been rescinded, rather than an action to recover the difference between what the bonds were worth as represented and what they were in fact worth. Upon discovering that the bonds were not first-mortgage bonds, which fact was discovered after the company defaulted in the payment of interest, the plaintiff, through her attorney, rescinded the purchase, tendered the bonds to the defendant, and demanded back the purchase price paid. The defendant positively refused to take back the bonds or repay the consideration. This was all that was required of the plaintiff before bringing action to

recover the consideration which she was induced by false representations to pay. *Potter v. Taggart,* 54 Wis. 395, 400, 401, 11 N. W. 678; *Herman v. Gray,* 79 Wis. 182, 189, 48 N. W. 113; *Bostwick v. Mutual Life Ins. Co.* 116 Wis. 392, 438, 440, 89 N. W. 538, 92 N. W. 246.

The issues in the Charney case are in all respects similar to those in the Conan case. The cases were tried together and the evidence which sustains the findings in the Conan case supports the judgment in the Charney case.

There is only one difficulty which we encounter in the Charney case. Her complaint was rather informal and no rescission of her purchase was in fact pleaded. It was, however, proven upon the trial that at the time Mrs. Conan's bonds were tendered to the defendant Mrs. Charney's bond was also tendered and that demand was made upon the defendant for return of the consideration paid by her, which demand was refused. It would have been better if the plaintiff had moved to amend her complaint. Both actions were undoubtedly tried on the theory that both plaintiffs were seeking to recover the considerations paid. Both cases rested upon substantially the same testimony, and rescissions in both cases were proved. We think, under these circumstances, that the complaint in the Charney case should be considered as amended so as to conform with the proof.

*By the Court.*—The judgments of the circuit court for Milwaukee county are reversed and the judgments of the civil court affirmed.

The following opinion was filed October 11, 1932:

NELSON, J. (*on motion for rehearing*). Some doubt seems to exist on the part of the defendant as to the effect of the decision herein. Upon the trial of these actions the civil court took into its custody only one of the bonds in-

volved in the actions, evidently not wishing to be responsible for the safe keeping of the others. The defendant seems to be of the opinion that the effect of the decision is to permit the plaintiffs to recover the judgments and also retain the bonds. This, of course, is not the effect of the decision. Both cases were considered and decided on the theory that they were actions for rescission. This requires, as a matter of course, that all of the bonds be delivered into court so that the defendant may be assured of their return to it. The plaintiffs concede that the bonds must be so delivered.

There is one further question. The judgments were for the full amounts of the moneys paid by the respective plaintiffs for the bonds. No account was taken of the interest on the bonds received by the plaintiffs prior to their default. It was supposed that the interest on the moneys paid was offset by the interest received on the bonds. If this is not the fact, the judgments of the civil court should be modified. The judgment should be for the full amounts of the moneys paid for the bonds, plus interest at the legal rate from the date of return, less amounts received by the plaintiffs as interest on the bonds.

*By the Court.*—The judgments of the circuit court for Milwaukee county are reversed and the judgments of the civil court are affirmed when modified in accordance with the opinion.