WISCONSIN MUTUAL PLATE GLASS INSURANCE COMPANY, Appellant, vs. GUARANTEED BOND COMPANY and another, Respondents.

*April 2—April 30, 1935.*

C. A. Markham of Beaver Dam, attorney, and *Paul A. Hemmy, Jr.,* of Juneau of counsel, for the appellant.

For the respondents there was a brief by *Coleman & Barry* of Milwaukee, and oral argument by *John S. Barry.*

MARTIN, J. The Guaranteed Bond Company is a corporation engaged in business as a securities broker and in 1925 was licensed and authorized by the railroad commission of Wisconsin to act as a broker in Wisconsin under the provisions of secs. 189.01 to 189.31, Stats. 1925. On September 17, 1925, said corporation filed with the railroad commission the statutory bond in the penalty of $20,000 as required under the provisions of sec. 189.08, Stats. 1925, as a condition precedent to a broker selling securities in Wisconsin in advance of their classification as Class A securities. The defendant, Maryland Casualty Company, is the surety on said bond, which bond was approved by the railroad commission.

On September 21, 1925, the defendant, Guaranteed Bond Company, notified the railroad commission of its intention to sell Hotel Kankakee bonds under said surety bond prior to issuance of a permit. The railroad commission extended the time for filing an application for a permit to sell such bonds to November 20, 1925. The application for the permit in

question was made to the commission on November 19, 1925, and on February 17, 1926, the railroad commission denied a permit. On October 13, 1925, plaintiff purchased from the defendant, Guaranteed Bond Company, through its licensed agent, two $1,000 Hotel Kankakee bonds, and paid therefor the sum of $2,014.67. Interest was paid on said bonds to July 1, 1931, since which time they have been in default.

The Guaranteed Bond Company, the hostelry company of Kankakee, issuer of the bonds, and the Federal Surety Company, which insured the bonds, are all insolvent. Subsequent to the insolvency of the hotel company, the trustee named in the trust deed securing the Hotel Kankakee bonds commenced foreclosure proceedings under said trust deed. Thereupon the holders of said bonds formed a "bondholders' protective committee" for the mutual protection of said bondholders.

The bondholders' protective agreement, in part, provides:

"The depositors constitute and appoint the committee their sole and exclusive attorney and agent, for the purpose of carrying out this agreement and constitute and appoint the committee the lawful attorney of them and each of them, irrevocably, to execute in their behalf such instruments in writing, and to do all such acts and things as, to said committee may seem proper to protect or promote the rights or interest of the depositors."

This agreement further provides: "The committee, whenever it deems it to the interest of all the depositors, may, upon such terms as it may deem best, permit such depositors, as it may see fit, upon surrender to the depositary of certificates of deposit, to withdraw bonds and/or interest coupons to the amounts represented by the certificates of deposit so surrendered."

It appears that the deed securing the Hotel Kankakee bonds was foreclosed and the trustee bid in the property at the foreclosure sale in 1932. The trustee still owns said property for the benefit of the bondholders.

The plaintiff on February 1, 1932, deposited its bonds with the depositary named in the protective agreement, taking a certificate evidencing such deposit.

This action is brought under sec. 189.08, Stats. 1925, which provides:

"Any person authorized by the commission to act as a broker, who desires to sell any Class A security before securing a permit, may do so after complying with the following conditions:

"(1) Such broker shall notify the commission in writing of the name or description of such security, and shall, within thirty days or within such further time as the commission may fix, apply for a permit for the sale thereof as Class A security.

"(2) He shall also file with the commission a bond executed by a licensed surety company, in the sum of twenty thousand dollars conditioned to repay to any purchaser of such securities on demand any money received of him therefor if said application shall not be made as above provided, or the commission shall determine that the securities so offered are not Class A securities, and to pay to the commission the fees required by section 189.26. When such bond shall have been approved by the commission, Class A securities may be offered for sale by such broker as above provided so long as such bond shall be in force, but the commission shall have authority, for cause, to terminate any broker's right to proceed under the provisions of this section."

Prior to the commencement of the trial of this action in the court below, the plaintiff did not tender back the actual bonds, but during the trial did tender the certificate of deposit which it had received from the depositary covering its bonds deposited under the bondholders' protective agreement, together with an assignment of said certificate, to the defendant Maryland Casualty Company; and also tendered a written assignment of its claim against the Federal Surety Company; and, upon said tenders being declined, plaintiff deposited said certificate and assignment with the clerk of the circuit court.

The trial court found that, among other terms and conditions of the bondholders' protective agreement, the depositors, including the plaintiff, "sold, assigned and transferred to said committee, the full legal, equitable and beneficial title to all such bonds so deposited, and gave and granted to said committee the right to exercise in its discretion all the rights and powers of the respective owners or holders of said bonds. . . . That the plaintiff has placed itself in a position where it cannot insist upon the repurchase of the bonds because it is unable to produce said bonds and restore the *status quo ante.*" The trial court further found that the terms and conditions of the bondholders' protective agreement are such that the assignment of the rights of the plaintiff as one of the subscribers to such agreement would not be equivalent to a restoration of the bonds.

Appellant contends it has done all that it reasonably can do to restore the Guaranteed Bond Company to its former position by tendering into court all its title to the bonds in question, and by making the tender good by depositing an assignment of all its rights with the clerk of the circuit court. The reason why plaintiff cannot make full restoration of the two bonds it purchased from the defendant Guaranteed Bond Company on October 13, 1925, is on account of its exercise of ownership of said bonds after they became in default by depositing same under the bondholders' protective agreement.

This is an action for restoration pursuant to contract. When the bonds failed to qualify as Class A securities, plaintiff had the legal right to maintain its action on the statutory bond or elect to retain the bonds purchased. Having elected to demand repayment, it must deliver back the bonds. Restatement, Contracts, § 349, states:

"(1) If the plaintiff has received any interest in land or goods or any other property in exchange for his own per-

formance, he cannot get judgment for restitution in money unless promptly after knowledge of the breach he returns or offers to return what he has received, in substantially as good a condition as when it was transferred to him. . . .

"(a) The purpose of restitution as a remedy for breach is the restoration of the *status quo ante* as far as is practicable. If the plaintiff has received specific land, chattels, or choses in action under the contract and they are capable of return, the restoration of the *status quo* involves their return to the defendant, as well as restitution to the plaintiff of what the defendant has received. While there is no literal rescission of the contract, the result reached by the restitutionary remedy approximates that reached by rescission."

In *Conan v. A. C. Allyn & Co.* 209 Wis. 35, 243 N. W. 400, 244 N. W. 585, the court, on motion for rehearing, said:

"The defendant seems to be of the opinion that the effect of the decision is to permit the plaintiffs to recover the judgments and also retain the bonds. This, of course, is not the effect of the decision. Both cases were considered and decided on the theory that they were actions for rescission. This requires, as a matter of course, that all of the bonds be delivered into court so that the defendant may be assured of their return to it."

Appellant contends that as far as practicable and to the extent that the bonds are capable of return, it has in fact made restoration of the *status quo ante*. We cannot agree with this contention. These bonds were in default as to interest since July 1, 1931. The Guaranteed Bond Company, the hostelry company of Kankakee, issuer of the bonds, and the Federal Surety Company, which insured the bonds all became insolvent. The trust deed had been foreclosed. The Hotel Kankakee property was bid in by the trustee at the foreclosure sale in 1932. With full knowledge of these conditions, appellant on February 1, 1932, signed the bondholders' protective agreement to which reference has been

made, and deposited its bonds in accord therewith, subject to the provisions of said agreement. The bonds were capable of being returned. An assignment of the certificate evidencing the deposit of said bonds with the depositary under the bondholders' protective agreement could not be regarded as a restoration of the *status quo ante*. The judgment must be affirmed.

*By the Court.*—Judgment affirmed.