WALD and another, Appellants, vs. MITTEN, Sheriff, Respondent.

*October 12—December 6, 1938.*

394

For the appellants there was a brief by *Weinstein & Klein* of Milwaukee, and oral argument by *Maurice Weinstein*.

*Samuil Nissenbaum* of Milwaukee, for the respondent. ·

NELSON, J.    It is contended by the plaintiff that the circuit court erred in reversing the judgment of the civil court. The civil court found that the automobile, at the time of its seizure, belonged to the plaintiff and not to his brother Alex, the judgment debtor, and therefore was not subject to seizure on an execution against the latter.    The circuit court, after a painstaking review of the evidence, found that that finding was against the clear preponderance of the evidence.

Upon an appeal from the civil court to the circuit court, the findings of the civil court may not be disturbed unless they are against the clear preponderance of the evidence.    *Pabst B. Co. v. Milwaukee L. Co.* 156 Wis. 615, 146 N. W. 879; *Becker v. Beaver Mfg. Co.* 158 Wis. 471, 149 N. W. 209; *Keck v. Michigan Quartz Silica Co.* 158 Wis. 500, 149 N. W. 208; *Harper v. McMahon,* 167 Wis. 388, 167 N. W. 431; *Foster v. Bauer,* 173 Wis. 231, 180 N. W. 817; *Martins v. Bauer,* 188 Wis. 188, 205 N. W. 907; *Conan v. A. C. Allyn & Co.* 209 Wis. 35, 243 N. W. 400, 244 N. W. 585; *Le Sage v. Le Sage,* 224 Wis. 57, 271 N. W. 369.    So the vital question under plaintiff's first assignment of error is whether the findings of the civil court were contrary to

the clear preponderance of the evidence. This necessitates a recitation of the facts. The plaintiff, David Wald, Alex Wald, and Eugene Wald are brothers. The plaintiff was not present at the trial. He was in Europe. His case rested upon the testimony of his brothers, Alex and Eugene. Eugene testified that the automobile in question was one of two automobiles that he had bought at the same time,—one for himself and one for the plaintiff, while the latter was in Europe; that he did not desire to have two automobiles in his own name so he arranged to have the title to the one he had bought for David put in Alex's name; that he did not wish to sign two contracts; that two old or used cars were traded in on the deal with the automobile sales company and their agreed trade-in value credited on the purchase prices of the new cars; that one of the secondhand cars was a Plymouth; that conditional sale contracts were entered into to secure the balances, and that one contract was signed by him and one by Alex. It was shown that the certificate of title to the Plymouth, which was traded in on the deal, was in Alex's name. The Plymouth had been sold to him on a conditional sale contract a little over a year before. A dealer's bill of sale describing the Oldsmobile was executed and delivered to Alex. On May 14, 1936, Alex signed an application for a license and a certificate of title for the automobile in question. He made the following representations:

"Owner's name Alex Wald. . . .

"$\frac{We}{I}$ certify that $\frac{we\ are}{I\ am}$ the owner of the motor vehicle herein described to the extent indicated in the application; that the foregoing statement of facts is as complete as $\frac{we}{I}$ can make it, and that it is correct and true to the best of $\frac{our}{my}$ knowledge, information and belief."

Upon that application, a certificate of title was issued to Alex by the secretary of state on May 26, 1936. Eugene

testified that he had made most of the payments to the finance company on the automobile in question; that David had made some payments; and that he had been reimbursed for some of the payments made by him. The evidence shows that several of Eugene's checks to the finance company included payments on the conditional sale contract signed by him as well as that signed by Alex. A single check for $43.47, signed by David and dated April 21, 1937, a month or so subsequent to the actual transfer of title to him, was offered and received in evidence. A number of checks signed by Eugene were referred to by him in his testimony but were not offered or received in evidence. Alex testified that the Oldsmobile was not his car; that the Plymouth car which had been traded in on the deal was paid for by David and was not paid for by him. In answer to the question as to how the Plymouth car happened to be in his name he testified as follows:

"*A.* Well, we operated the brewery in Oconomowoc and David was the majority stockholder and we had—he furnished quite a bit of money for the brewery and needed a car to commute—the salesman was driving it,—David doesn't bother much but outside of his business except he had me invested—

"*Q.* That is why it was put in your name? *A.* That is why it was put in my name."

In answer to a question as to how the Oldsmobile happened to be placed in his name, he testified:

"*A.* Well, my brother was in Europe.

"*Q.* David? *A.* David. Eugene saw he can make a good deal on the two cars so he made a trade in for both cars because the other car had 25,000 miles on it.

"*Q.* Then the new car was placed in your name? *A.* That is right.

"*Q.* Did you ever make any payments on this car? *A.* Not a penny."

He admitted that he signed the conditional sale contract, the applications for a certificate of title, and a license, and

that the certificate of title to the Plymouth traded in was in his name. The certificate of title to the Oldsmobile was dated May 28, 1936. That certificate was assigned to David by Alex on March 22, 1937, as shown by the date written on the back thereof. A new certificate of title to the Oldsmobile was issued to David by the secretary of state on March 31, 1937. Both Alex and Eugene testified that the assignment or transfer of title to the Oldsmobile actually took place in November, 1936, when David returned from Europe. Alex testified that he was driving the car the day it was seized. The following questions and answers further illustrate the evasiveness of his answers:

"*Q.* You have been driving that automobile right along, have you not? *A.* I drive my other brother's car."
Answer stricken.
"*Q.* Did you drive that car? *A.* Yes.
"*Q.* Did you drive the car the day it was seized? *A.* Yes."

A careful review of all of the testimony adduced upon the trial impels the conclusion that the testimony of Alex and Eugene falls far short of explaining away the documents received in evidence. We are of the opinion that the circuit court was right in holding that the finding of the civil court was against the clear preponderance of the evidence.

At the time the Oldsmobile was seized by the defendant the title to it was actually in David, Alex having assigned his certificate of title to David on March 22, 1937. The possession of the Oldsmobile, however, was not changed and the following statute was applicable:

Sec. 241.05 "Every sale made by a vendor, of goods and chattels in his possession or under his control, and every assignment of goods and chattels, *unless the same be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things sold or assigned,* shall be presumed to be fraudulent and void as against the creditors of the vendor or the creditors of the

person making such assignment or subsequent purchasers in good faith; and shall be conclusive evidence of fraud unless it shall be made to appear on the part of the persons claiming under such sale or assignment that the same was made in good faith and without any intent to defraud such creditors or purchasers."

The testimony of Eugene and Alex, in our opinion, did not meet the burden cast upon them by the statute. In view of the fact that their testimony was so discredited by the documentary evidence, it cannot be claimed that the sale or assignment of the Oldsmobile to David was made in good faith and without intent to defraud the creditors of Alex.

Sec. 242.09 (1), Stats., provides in part:

"Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser. . . . (b) Disregard the conveyance and attach or levy execution upon the property conveyed."

The judgment creditor here apparently disregarded the assignment or conveyance and levied execution upon the property conveyed. While the circuit court made no specific finding, under the Fraudulent Conveyance Act, ch. 242, Stats., it is quite apparent that it so treated the assignment of the certificate by Alex to David.

The plaintiff next contends that the circuit court erred in permitting the entry of a money judgment. Sec. 14 (2), of the civil court act, provides:

"That in all actions and proceedings specified in sections 300.05 and 300.06, commenced in said court, where the amount involved or demanded in said action shall exceed the sum of $200, . . . the practice, pleadings, trials, judgments, and proceedings thereafter shall be governed by the provisions of law relating to circuit courts and proceedings

therein. . . ." (Ch. 549, Laws of 1909, as amended by ch. 425, Laws of 1911.)

Sec. 300.05 (8), Stats., specifically relates to replevin actions. The undisputed value of the Oldsmobile was $675. So the action, proceedings, and judgment were governed by the law relating to circuit courts and proceedings therein.

Sec. 270.59, Stats., provides as follows:

"In any action of replevin judgment for the plaintiff may be for the possession of the property, and of damages for the detention; and when the property shall have been delivered to the defendant, under section 265.06, judgment may be as aforesaid or absolutely for the value thereof at the plaintiff's option, and damages for the detention. If the property shall have been delivered to the plaintiff and the defendant prevails, judgment for the defendant may be for a return of the property or the value thereof, at his option, and damages for taking and withholding the same."

Was the language: "If the property shall have been delivered to the plaintiff and the defendant prevails, judgment for the defendant may be for a return of the property or the value thereof, at his option" applicable to the situation when judgment was entered? Considerable confusion has arisen in this case because the attorneys ignore the fact that while the defendant, Mitten, was in fact the sheriff of Milwaukee county he was not the sheriff referred to in the several replevin statutes. He was the defendant. The coroner of Milwaukee county was acting as sheriff, and so far as the action is concerned was the sheriff. The coroner, however, never took possession of the automobile. He left it in the possession of the defendant, Mitten. The automobile remained there until after the trial in the civil court. When the civil court entered judgment for the plaintiff, the defendant, in pursuance of sec. 306.08, Stats., which relates to justice court, not circuit court practice, and therefore was not appli-

cable to the action, filed an affidavit in which his intention to appeal was stated (which affidavit would have been sufficient in justice court, or in civil court had the value of the Oldsmobile not exceeded $200), to prevent the delivery of the automobile to the plaintiff unless an undertaking should be executed on his part, etc. The affidavit was without effect. However, the plaintiff, in pursuance of sec. 306.08, which he now concedes was wholly erroneous, filed an indemnity bond. The bond recites the commencement of the replevin action, the trial thereof, the judgment entered, the affidavit of the defendant's attorney, the fact that the defendant still retains possession of the property, the fact that the plaintiff desires the return thereof, and then provides:

"Now, therefore, we, the subscribers hereto, David Wald, Eugene Wald, both of Milwaukee, Wisconsin, as principals, and the St. Paul Mercury Indemnity Company of St. Paul, Minnesota, as surety, do hereby undertake and become bound to the defendant in the sum of one thousand dollars, under the following terms and conditions:

"If, upon the completion of an appeal by the defendant herein, the judgment shall be reversed in the appellate court as to any part of said property ordered to be delivered to said plaintiff, said plaintiff will return such property, or so much thereof as shall be adjudged to be returned to the appellant, and shall pay any judgment which may be rendered against him on such appeal, and shall abide by any other order or judgment of the appellate court."

This bond was not in compliance with any statute. It was not given to the coroner, who in this action was the sheriff. The bond, therefore, must be considered and held to be a common-law bond, given in furtherance of an arrangement made by the plaintiff and the defendant, whereby the plaintiff was given the possession of the automobile. The plaintiff was willing to indemnify the defendant should it be decided on the appeal to the circuit court that he, the plaintiff, was not entitled to the possession of the automobile. The de-

fendant, pursuant to the arrangement, and upon the giving of the bond, delivered the automobile to the plaintiff.

Sec. 270.59, Stats., in part provides:

"If the property shall have been delivered to the plaintiff and the defendant prevails, judgment for the defendant may be for a return of the property or the value thereof, at his option, and damages for taking and withholding the same."

That section is applicable to replevin actions in the circuit court and to replevin actions in the civil court where the value of the property replevined exceeds $200. At the time the judgment was entered by the circuit court, the Oldsmobile had been delivered to the plaintiff. The plaintiff contends that the language of sec. 270.59, Stats., just hereinbefore recited, should be construed as though the statute read:

"If the property shall have been delivered to the plaintiff pursuant to or under the provisions of sections 265.01, 265.03, 265.04, 265.06."

That contention cannot be upheld. The money judgment in favor of the defendant and against the plaintiff was, in our opinion, properly entered.

The St. Paul-Mercury Indemnity Company contends that the court erred in granting judgment against it. We are of the view that that contention is sound. Sec. 270.60, Stats., in part provides:

*"Judgment in replevin against principal and sureties.* The judgment in replevin may be entered both against the principal and the sureties on his bond for a return or delivery of the property, as prescribed in chapter 265."

There was no return or delivery of the automobile pursuant to any bond as prescribed in ch. 265, Stats. In *Hoeffler Mfg. Co. v. Casualty Co. of America,* 163 Wis. 184, 157 N. W. 702, it was held that a bond given in a replevin action, unless given in compliance with the statute, is void so far as

the replevin proceeding is concerned and that no valid judgment could be rendered against the surety thereon in the replevin action. As before stated, the indemnity bond furnished was not in compliance with any statute and must be regarded as given in pursuance of a private arrangement between the parties, with the force and effect of a common-law bond. We think, therefore, that it was error to render judgment against the St. Paul-Mercury Indemnity Company in the replevin action.

The plaintiff finally contends that the circuit court erred in granting the application of Joseph Neegan to be interpleaded. It appears, that after the trial but before judgment in the civil court, Joseph Neegan petitioned the civil court to be made a party to the action. The petition was denied. Upon appeal by the defendant to the circuit court, from the judgment, the circuit court reversed the denial of the petition and made Neegan a party defendant. No statute or rule authorizing such a proceeding is cited. We are of the view that such action was erroneous, but we do not perceive in just what way the plaintiff was prejudiced by the order. Payment of the judgment to the defendant will fully satisfy it.

*By the Court.*—The order interpleading Joseph Neegan as a party defendant is affirmed. The judgment, in favor of Edward J. Mitten and Joseph Neegan, against the plaintiff is affirmed. The judgment of the defendants, Edward J. Mitten and Joseph Neegan, against the St. Paul-Mercury Indemnity Company, is reversed, without prejudice to the right to commence an action on the bond. The defendant Mitten to have costs against the plaintiff Wald.