Rahn *v.* Singer Manuf'g Co.[1]

(*Circuit Court, D. Minnesota. October Term, 1885.*)

1. Master and Servant—Relation—Contract Establishing.

A contract was entered into between the defendant, a sewing-machine company, and one C., which was called a "canvasser's salary and commission contract." By it C. was to sell the machines of the defendant on a commission, receiving five dollars for every machine he sold, and, in addition, 10 per cent. of its gross price. The defendant undertook to furnish him a wagon, which he was to use exclusively in its business, and he himself was to provide a horse and harness. It was further stipulated in the contract that he should employ himself under the direction of the defendant, and under such

[1]Reported by Ambrose Tighe, Esq., of the St. Paul bar.

rules as it, or its managers at Minneapolis, should prescribe. *Held*, by the court, that under such a contract C. was not an independent contractor, but a servant of the defendant, and that the defendant was liable in damages for his torts committed while in the discharge of its business.

2. SAME—LIABILITY OF MASTER FOR TORT OF SERVANT—SCOPE OF A SERVANT'S EMPLOYMENT—THE BURDEN AND NATURE OF THE PROOF.
   In order to fix the responsibility of the defendant, it is not necessary for the plaintiff to prove that the servant, for whose tort he seeks damages, was, at the time of the commission of the tort, engaged in executing specific commands of the defendant. It is enough for him to prove that the servant was acting within the general scope of his employment, but this much is necessary. If the usage of the parties, under the servant's contract of hiring, was of such a character that it allowed the servant to attend to his duties on such terms as suited his convenience, and at the time of the commission of the tort he was engaged in his own private business, but at the same time was pursuing the defendant's business in the service for which he was employed, the defendant would still be liable.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.
   It is not conclusive evidence of negligence on the plaintiff's part, in an action brought to recover damages for an injury sustained by being run over by the defendant's servant on a public street that at the time of the accident the plaintiff was crossing the street at a point not designated as a crossing; and this, too, although there were vehicles driving on the street and in sight. On the other hand, the plaintiff could not, without negligence, recklessly cross the street, nor take the chances of a nice calculation as to whether or not she could pass over with safety.

4. SAME—NEGLIGENCE, WHEN QUESTION FOR JURY.
   It is a question for the jury to determine whether or not it is a negligent act for the driver of a vehicle to proceed at a reckless speed, at dusk, racing along a public street.


At Law.

*John W. Willis* and *C. A. Ebert*, for plaintiff.
*Mahoney & Donahue* and *J. N. Cross*, for defendant.


NELSON, J., (*charging jury.*) The plaintiff, a citizen of this state, residing in Minneapolis, brings this suit against the Singer Manufacturing Company, a corporation incorporated and organized under the laws of the state of New Jersey, to recover damages for personal injury, inflicted, as she alleges, through the negligence of the defendant. She asks to be compensated for injury which she has suffered at the hands of this defendant, through its negligence, as she alleges. Of course, you will see that the gist of the whole action is the negligence of the defendant, and the burden of proof is upon the plaintiff to show that the defendant committed the injury, through its negligence, upon the plaintiff.

The claim of the plaintiff is that she was crossing, on the tenth day of April, 1884, about twilight, between sundown and dark, Franklin avenue, in the city of Minneapolis, and while crossing was run down by a horse and wagon driven by one Corbitt. The wagon had upon it a Singer sewing-machine, screwed down to the box of the wagon. Now, before the plaintiff can recover against the defendant, she must show that Corbitt was a servant of this defendant, that is, that the relation of master and servant existed; that Corbitt was a person whose conduct was under the control of the defendant in the

particular business in which he was engaged. The general rule is that the master is answerable for the wrongful act of a servant committed in the course of the master's service, and this will apply to a corporation as well as to an individual. Corporations who are represented by and who operate through agents are not responsible for all wrongful acts committed by their agents or servants; but the wrongful act must be done when the agent or servant was employed in the actual service of the corporation or engaged exclusively for its benefit; so that, in this case, the principal question for the jury to consider is, was Corbitt, at the time that this plaintiff was run down on that street, in the service of the defendant? The usual test to determine whether the relation of master and servant existed, is whether the person who is charged to be the master had the right to direct the person's conduct and prescribe the mode of his action in doing the particular business; that is, to direct how the work should be done. If the person who is employed to do a particular work reserves to himself when and how the work is to be done, he may be an independent contractor; so that you are to determine—and that is the first question that presents itself here—whether the relation of master and servant existed between the defendant and Corbitt at the time this plaintiff was run down on that street; bearing in mind that the right to direct the person's conduct, and to prescribe how the work or business should be done, is the usual test to determine whether the relation of master and servant exists.

In this case there is a contract, which is before you,—a contract of employment, signed by the defendant and Corbitt, defining what his duties were, and how he was to work. It is called a "canvasser's salary and commission contract," and by its terms Corbitt was to receive five dollars for every machine that he sold, and, in addition to the five dollars, he was to receive a commission upon the price of the machine which he sold, as a "selling commission." He was to receive, in addition to the said five dollars, a further sum of 10 per cent. on the gross price realized for said sales so made. He received, not only the fixed sum of five dollars, but he was to receive a commission of 10 per cent. upon the gross sales. In the pursuit of his business, the defendant agreed to furnish him a wagon. This wagon belonged to the company or the corporation, and Corbitt was to furnish a horse and harness, to be used exclusively in the business of the defendant. A further significant provision in the contract is, Corbitt, or the second party, agrees to employ himself under the direction of the said Singer Manufacturing Company; thus coming within the very test which is given to determine whether the relation of master and servant exists in law, viz., the right to direct the person's conduct, and to prescribe the mode of doing the work. Then this was to be done under the directions of the Singer Sewing-machine Company, and "under such rules and instructions as it, or their managers at Minneapolis, shall prescribe;" so that, upon the

testimony as introduced here, it is sufficient for me to say that this paper alone, in my opinion, establishes the relation of servant and master between Corbitt and the defendant in this action.

There is no doubt but that this woman was hurt when she was run down. Was this injury inflicted through the negligence of Corbitt, upon Franklin avenue, as the woman was crossing it diagonally, not at the intersection of the crossing and the street, where the usual crossing is, but near the south side of Franklin avenue, which runs east and west? The plaintiff, as well as the defendant through its servants, had an equal right on Franklin avenue, but both were required to exercise the care and diligence which the circumstances demanded at that time. It was not unlawful for the plaintiff to cross Franklin avenue at a point not designated as a crossing. She was required, however, to exercise all the care and prudence necessary for her safety. She could not recklessly cross that street, and expose herself to the danger of being run over, nor could she take the chances of a nice calculation as to whether or not she could pass over that street with safety. The testimony shows that, at the time when she made an effort to cross that street, there was coming down from Ninth avenue, towards her, a horse and a top buggy; not the horse and wagon driven by Corbitt, but one which, from the point where she stood, was in front of the horse and wagon which was owned by the defendant. So that on that state of the case, as I said before, she testifying that she saw there were teams upon that street, must be prudent and act with diligence to avoid the danger to which she was exposed in crossing the street. The driver of the vehicle coming towards her was also required to be watchful and diligent, and could not drive through this street without exercising care and caution to avoid a collision with other vehicles or with pedestrians; and the care and caution required to be exercised by him must be reasonable, and such as the circumstances of the case at that time demanded. Of course, if the street had been crowded, the degree of care which he would be required to exercise would have been greater than when there were but a few vehicles upon the street and but few pedestrians; but he was required to be careful and cautious in not unnecessarily exposing to danger persons upon the street. If he was proceeding at a reckless speed, at dusk, racing, it is for you to determine whether that was not on his part a negligent act; whether by the speed, if it was a rapid speed, at which he was proceeding, whether it was not at a risk to persons who had an equal right to be upon the street with him. Now, it is for you to determine, upon all the evidence which has been introduced in regard to the manner in which Corbitt was proceeding upon that street, whether he was negligent at that time, or whether he was exercising all the care and caution that was necessary. If you should determine that there was no negligence, then, of course, there is an end of this case; for, if this injury was not brought about by negligence on the part of Corbitt, who was the servant of the de-

fendant, the plaintiff cannot recover. If, however, you should determine that Corbitt was negligent at that time, and that this injury was produced by that negligence, then you are to consider this next question: Whether, at the time the plaintiff was run down, Corbitt was about the defendant's business, acting within the scope of his employment; and that brings me to another branch of this case.

If you should find that Corbit was the servant of the defendant, it was not necessary for the plaintiff to prove that he had any specific directions from the defendant which required him to be upon this street at this particular time, but he must have been at that time acting within the scope of his employment, and about the business of the defendant. And if he was at that time acting within the general scope of his employment, and about the business of the defendant, and negligently at that time ran down the plaintiff, his negligence is imputable to the defendant. Upon that branch of the case the point to be determined by you is: "Was the injury inflicted by Corbitt's negligence incidental to the discharge of his duty as the defendant's servant?" If Corbitt had been attending to his own business, and was returning home from a private business trip, or a pleasure trip of his own, and was engaged in business outside of the range of his employment by the defendant, at the time the plaintiff was run down, then, although he was using the wagon at the time which he used when engaged in the performance of the defendant's business, the relation of master and servant did not so exist as to make the defendant liable. Corbitt must be shown to have been, at the time the plaintiff was run down, engaged in the business of the defendant. To illustrate, if a hired man, who is employed by a farmer to use his team to haul wood, while in the performance of such service, either going with an empty wagon or returning with a load of wood, negligently runs down on the highway a pedestrian, the employer is liable for the injury inflicted; that is, provided the person who was run down was not guilty of any contributory negligence. But if the hired man takes the same team, and deviates from the range of his employment to engage exclusively in his own private business, outside of the service required by reason of his engagement, and an injury is inflicted at that time, his employer, the farmer, is not responsible for the wrongs inflicted while the hired man was so using the team. On the other hand, if Corbitt was free to canvass and sell the defendant's machines on such terms as suited his own convenience, and had taken that trip to look after his own private business, and at the same time canvassed and sold the defendant's machines, the defendant is not necessarily exempt from liability. That is, if Corbitt combined his own business with that of the defendant, and was using the team not exclusively for his own ends, but at the same time was pursuing the defendant's business, in the service for which he was employed, then the defendant would be liable if an injury was the result of Corbitt's negligence.

Upon that branch of the case, you must determine upon all the evidence relating thereto, remembering that the burden of proof is upon the plaintiff to show that at the time of the injury Corbitt was acting within the scope of his employment. If you should determine all these questions in favor of the plaintiff,—that Corbitt was negligent at the time that this injury occurred; and that the injury was the result of his negligence; and, at the time plaintiff was run down, Corbitt was about the defendant's business, and within the scope of his employment,—then the plaintiff has proved her case, unless she was guilty of contributory negligence in crossing that street at that time; and this is a question for you to determine. It is a matter of defense, and the burden of proof in this case is shifted upon the defendant, and he must prove to your satisfaction, by the weight of evidence, that the plaintiff has been guilty of contributory negligence. In arriving at that, you must determine from all the evidence whether the danger in crossing the street at that time was so obvious and so apparent that none but a reckless person would have crossed. If you find that she did not exercise the care and caution called for at that time, and that she was guilty of contributory negligence, then she cannot recover. If, however, all the care was exercised by her which a prudent person would exercise under the circumstances, then she is not guilty of contributory negligence, and the defendant is answerable for the conduct of Corbitt.

If the plaintiff is entitled to recover in this case, the next question for you to determine is how much will compensate her for the injury inflicted. Upon that point, I cannot give you much assistance. It is a question for you to determine, upon all the evidence, as to what amount of money will compensate the plaintiff, under the circumstances, for the injury which was inflicted upon her. She is entitled, of course, to compensation for the pain and suffering accompanying the injury, and for all necessary expenses incurred in consequence of the injury, for nursing, attention of physicians, and loss of time, and she is also entitled to such a sum as, in your opinion, is just and proper, if this should be a permanent injury; and it is for you to determine whether, upon all the testimony in the case, these injuries are temporary or permanent. No malice has been shown, and therefore there cannot be any recovery upon the ground that it was a wanton or reckless running down of this plaintiff. If you should find from all the evidence in this case that the plaintiff is entitled to recover, your verdict should be for a fair and just compensation for the injuries inflicted.

The jury returned a verdict finding damages for the plaintiff in the sum of $10,000. A motion for a new trial, made by the defendant, was denied, and verdict reduced to $5,100, and writ of error granted.