TETTING, Respondent, vs. HOTEL PFISTER, INC., Appellant.

*March 4—March 31, 1936.*

142

For the appellant there was a brief by *Rouiller, Dougherty, Arnold & Kivett* and *Lines, Spooner & Quarles,* and oral argument by *M. H. Keelan,* all of Milwaukee.

For the respondent there was a brief by *Mayer, Vandercook & Wilde,* attorneys, and *Walter F. Mayer* of counsel, all of Milwaukee, and oral argument by *Mr. Mayer.*

WICKHEM, J.   The first contention of defendant is that the evidence does not sustain the findings of the jury that Charles E. Carlson, defendant's masseur, was negligent in administering a massage to plaintiff, and that this negligence caused plaintiff's injuries.   This requires a review of the facts.

Plaintiff was forty-five years of age at the time of the alleged injury.   In February, 1932, he went to the Turkish bath parlor maintained by defendant and Charles E. Carlson, one of the attendants, administered a Swedish massage. Plaintiff testified that the massage was given by striking his thigh with the medial side of the right hand from the knuckle to the wrist.   During this massage, plaintiff was lying on his back with the knee of his left leg raised and his left heel in close proximity to his body.   The massage caused pain, and thereafter plaintiff's leg became swollen along the course of the saphenous vein.   Thrombophlebitis developed.   This condition involves an inflammation of the vein and a blood clot.   There is some dispute in the expert testimony whether trauma is capable of producing it.   Defendant's operator had no recollection of the massage.   He testified that in using the hacking method, he used the upper part of the fourth and fifth fingers.   He also testified that it would be improper to use the hacking method with the leg in a raised position because the muscles would be tightened, but he also denied that he ever administered a massage with the leg in that position. The evidence of several masseurs was to the effect that it is improper and dangerous to use the hacking method in the manner and under the conditions described by plaintiff.

This evidence is attacked as insufficient upon the theory that this is really a malpractice case, and that under the doctrine of *Holton v. Burton,* 197 Wis. 405, 222 N. W. 225, the malpractice of the masseur could only be established by expert testimony of witnesses qualified to determine that the defendant's masseur neglected to follow the accepted custom and practice of the masseurs in the vicinity where he practiced. There is no merit to this contention. Plaintiff testified that the hacking was done with the side of the operator's right hand while his leg was in a position which would greatly tighten the muscles. Even defendant's masseur concedes the impropriety and the dangerous quality of the hacking process so applied, and contents himself with a denial that he ever so employed this process. The testimony of the plaintiff's other experts is not merely to the effect that they would have performed this massage somewhat differently, but that the methods claimed to be used are dangerous and improper.

The facts are not analogous to those in *DeBruine v. Voskuil,* 168 Wis. 104, 169 N. W. 288, where this court held that physicians are not compelled to choose at their peril between two accepted methods of treatment, and that statements of experts that they would have treated the fracture in some other way are incompetent. It is our conclusion that the jury could properly conclude that the massage was negligently administered.

With respect to cause, there need be very little comment. There is expert testimony to the effect that the massage was adequate to produce a thrombophlebitis. This being true, the immediate pain and swelling at the point at which the massage was administered to the leg, followed by the development of thrombophlebitis in the vicinity of the pain and swelling, are enough to sustain a finding of cause. So far as foreseeability is concerned, the case is governed by

*Osborne v. Montgomery,* 203 Wis. 223, 234 N. W. 372. Once the act is found to have been negligent, the element of foreseeability has no further application, and the question is whether a jury could find the massage to have been a substantial factor in producing the injury. Further than this, it is clear from all the testimony that the likelihood of injury to the veins of a patient from an improper application of the hacking method was not only foreseeable, but definitely known to practicing masseurs.

It is next contended that Carlson was an independent contractor for whose negligent acts the Hotel Pfister is not liable. This is based upon the fact that masseurs are required by law to be licensed, and upon the contention that, while not physicians, they are members of the healing profession, and, as professional men, not subject to the control of corporate and individual employers who may engage their services.

The following quotation from the opinion in *Gomber v. Industrial Comm.* 219 Wis. 91, 261 N. W. 409, is particularly relied upon. That case presented the question whether a physician employed by a welfare association to give medical care to the employees of a plant was an employee within the meaning of the Workmen's Compensation Act. The court said:

"The decisions of which the rationale is that physicians and surgeons are not the servants of their employers are referable to the conception that they are 'professional men' who are engaged on the understanding that they are to 'exercise their profession to the best of their abilities according to their own discretion; but in exercising it they are in no way under his [their] orders or bound to obey his [their] directions.' This theory as to the nature of their position necessarily implies that they are independent contractors—a designation which has sometimes been specifically applied to them."

At the outset, it is to be noted, (1) that in its pleadings, defendant expressly admitted that Carlson was its employee; (2) that the record discloses no request on its part to have submitted to the jury any issue of fact with reference to the status of Carlson as an employee. Hence, if defendant has any standing upon this appeal to assert that the relation of master and servant did not exist between defendant and its masseur, the assertion must be based upon a rule of law that a licensed masseur cannot be a servant, (1) because the law requires his selection to be from a limited class, and (2) because as a matter of law persons engaging the services of masseurs cannot control the details of their work. Neither rule has any standing in principle or authority.

With respect to (1), Restatement, Agency, § 223, is as follows:

"The relationship of master and servant may exist although the law requires the selection of persons for the particular work to be made from a limited class irrespective of how limited the class is, and the master is subject to liability for torts committed within the scope of employment by servants selected from such a class."

With respect to (2), it is clear to us that no rule of law exists to the effect that masseurs or even physicians and surgeons cannot under any circumstances occupy a relationship of employee, agent, or servant. It is clear to us that a clinic or hospital, other than one operating upon a charitable basis, may engage a house physician as an employee, at least if he works under the superintendence of a qualified physician and engages to place "his time and service at the call of a superior." *Bernstein v. Beth Israel Hospital,* 236 N. Y. 268, 140 N. E. 694, 30 A. L. R. 598.

It is, of course, obvious that where a hospital is operated as a charitable institution and sustains no liability to its patients, or where, by reason of its contract with its patients, it merely engages to secure competent medical service, the

relation between the physician and the hospital is of no consequence. Nor does the fact that a particular occupation involves technical skill and training and puts control of the details beyond the capacity of the employer require the conclusion of law that no member of a profession involving skill or technical training can be an employee. The right to control may exist, although the ability to control does not. *Miller & Rose v. Rich,* 195 Wis. 468, 218 N. W. 716.

It is our conclusion that there is no rule of law which precludes the conclusion that a masseur may be a servant, employee, or agent, and that no question of fact having to do with Carlson's actual relation to the defendant is properly before this court. If it were, we would not be inclined to disturb the conclusion of the trial court. Carlson was hired for general service in the Turkish bath parlor and paid a salary upon his general work, as well as a commission upon massages given. He gave all his services to the defendant; he was assistant to one Mathiesen, who had charge of the parlor. There is no evidence that Mathiesen was not a qualified masseur perfectly capable of directing the details of Carlson's work on behalf of defendant. In the absence of any issue in the pleadings on the question of employment, it can hardly be held that plaintiff was bound to make any further demonstration of employment than was made in this case. We discover no error in the record.

*By the Court.*—Judgment affirmed.