Le Sage (Gertrude), by Guardian *ad litem,* Appellant, vs.
Le Sage (Dolly) and another, Respondents.
Le Sage (Emma), Appellant, vs. Same, Respondents.

*January 15—February 9, 1937.*

*Joseph A. Padway* of Milwaukee, for the appellants.

For the respondents there was a brief by *Bitker, Tierney & Puchner* of Milwaukee, and oral argument by *Joseph E. Tierney.*

FRITZ, J.  The personal injuries, for which the plaintiffs, Gertrude Le Sage and Emma Le Sage, sought, in separate actions, to recover damages from the defendant Dolly Le Sage and her automobile liability insurance carrier, were sus-

tained while they were riding as guests in her automobile, which was being operated by her brother, C. F. Le Sage. He was the husband of Emma Le Sage, and the father of Gertrude Le Sage. The accident occurred while C. F. Le Sage was returning in the automobile with his wife and four children to Milwaukee from Menominee, Michigan. On these appeals no question is raised in respect to C. F. Le Sage's causal negligence in operating the automobile. The principal ultimate question is whether he was operating the automobile under circumstances which rendered Dolly Le Sage liable, as principal, for his conduct as her agent, under the doctrine of *respondeat superior*.

On each trial there was uncontradicted testimony to the following effect (even though in Emma Le Sage's action in the civil court admissions made by Dolly Le Sage on an examination under sec. 326.12, Stats., noticed only in the circuit court action, were improperly excluded) : Several weeks before Emma Le Sage went on a vacation trip with her four children from their home in Milwaukee to Menominee, Dolly Le Sage offered and arranged to transport them there and back home again in her automobile. She was prevented from taking them to Menominee by illness and an operation, and so Mrs. Le Sage's brother took her and her children to Menominee in his car. 'When the children had to return in order to attend school, C. F. Le Sage concluded to go to Menominee on the Saturday preceding Labor Day and bring his family back by train, and while he was visiting with Dolly Le Sage on Friday evening he told her of his intention in that respect. He did not ask for the use of her automobile. She, however (as he testified, without contradiction), said to him, " 'No, sir, you won't do any such a thing; I promised I would get them and I can't do it and you take my car and bring them down. I was going to do it and you do it for me,' and she said she would give me some money

to pay the expense, and she gave me $10 . . . to buy the gas and oil and whatever I needed for the expenses on the trip for her." The next day he drove her automobile to Menominee, and was driving back to Milwaukee, with his wife and children as passengers, when the accident occurred. He had used part of the $10 for the purposes for which Dolly Le Sage had given them to him, and he returned the balance to her. In addition, there was in evidence on the circuit court trial, Dolly Le Sage's answer, on her examination before trial, "I would have taken them up and back if I hadn't been ill." In view of all that testimony, the jury was warranted in finding on the circuit court trial that the trip in question was undertaken by the express direction and for the benefit of the defendant, Dolly Le Sage; and as the credibility of the testimony and the proper inferences to be drawn therefrom were questions for the jury, the court should not have substituted its finding to the contrary after the verdict was returned. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741; *McCaffrey v. Minneapolis, St. P. & S. S. M. R. Co.* 222 Wis. 311, 267 N. W. 326, 330, 268 N. W. 872. Likewise, the evidence admitted on the trial in civil court warranted the court's findings that the automobile was being driven by C. F. Le Sage with the knowledge and consent of Dolly Le Sage, and on her behalf as her agent; and as that finding was not against the clear preponderance of the credible evidence, it was beyond the province of an appellate court to set it aside and find to the contrary. *Pabst B. Co. v. Milwaukee L. Co.* 156 Wis. 615, 621, 146 N. W. 879; *Becker v. Beaver Mfg. Co.* 158 Wis. 471, 149 N. W. 209; *Interior Woodwork Co. v. Buhler,* 207 Wis. 1, 6, 238 N. W. 822.

Under the facts established by the evidence, and found by the jury and the civil court, as stated above, the doctrine of *respondeat superior* was applicable in each case to the rela-

tionship of principal and agent which existed between Dolly Le Sage and C. F. Le Sage in respect to his operation of her automobile at the time of the accident. Because she had promised and arranged to transport Mrs. Le Sage and the children in her automobile on a vacation trip from Milwaukee to Menominee and return, she vetoed C. F. Le Sage's intention to use railway transportation in performing his obligation to bring his family back to Milwaukee; and it was because she could not drive her automobile herself on account of her illness that she directed him to drive it and bring his family back in it at her expense. Thus, she purposely substituted transportation by means of her automobile, operated for her at her direction and expense, for the railway transportation which her brother had intended to provide for his wife and children. There was no obligation on his part to transport them by means of an automobile. Dolly Le Sage voluntarily assumed that obligation and the resulting obligation of host in respect to Emma Le Sage and the children, when she arranged to have them ride as her guests in her automobile, operated at her direction by C. F. Le Sage on her behalf, and for her benefit, in that she thereby had him perform for her, as well as she could under the circumstances, her promise to Mrs. Le Sage and the children. Consequently, the trip made at her express direction and expense to enable her to discharge a promise, which she considered an obligation on her part that she wanted to have performed for herself, was something more than merely a trip taken at her request, or for her pleasure or satisfaction. Under the circumstances, the matter of transportation by means of her automobile was entirely her own affair and transaction, and therefore she is liable for the results of negligence in the conduct thereof. In those respects the cases at bar are distinguishable from the situation in *Schneider v. Schneider,* 160 Md. 18, 152 Atl. 498, cited by the defendants.

It matters not that Dolly Le Sage was under no legal obligation to provide the transportation, or that it was C. F. Le Sage's legal duty to provide transportation for the return of his family to Milwaukee. In so far as Dolly Le Sage is concerned, her direction to C. F. Le Sage to drive her car and transport his family in it to Milwaukee at her expense, resulted, under the circumstances, in an express agency for that mission, which renders her liable for his negligence in the conduct thereof. The decisions in *Novak v. Zastrow,* 200 Wis. 394, 228 N. W. 473; *Zeidler v. Goelzer,* 191 Wis. 378, 384, 211 N. W. 140, are in point. In the *Novak Case* the court (in considering whether a husband was liable for the negligence of his wife in operating his car from Madison to Monroe to transport her mother, who was to visit with them) said, after holding that no legal duty rested upon him to furnish her with transportation,—

"Of course the husband might have assumed the responsibility of providing this transportation, and if he had done so, and directed or requested his wife to take his car and bring her mother to Monroe, then an express agency would have resulted."

Likewise, in *Zeidler v. Goelzer, supra,* where a son was driving his father's car in which his sisters were accompanying him to go tobogganing, the court said,—

"Had the father in express language given directions for this trip, or had he requested it for the purpose of affording amusement and entertainment for his daughters, the son would clearly have been constituted the agent, as much so as if such request or direction had been given to a chauffeur in the regular employ of the father."

The fact that Dolly Le Sage directed C. F. Le Sage, instead of some stranger, to drive her automobile for her on that trip, and, likewise, that the use and operation of the automobile was also beneficial to C. F. Le Sage in that it

enabled him to thereby discharge his duty to provide transportation for his family, did not prevent his becoming Dolly Le Sage's agent, or relieve her as his principal from liability under the *respondeat superior* doctrine. In the *Zeidler Case, supra,* the principal was held liable although the trip in question was for the benefit of the agent, as well as the principal. As is stated in Restatement, Agency, § 236,—

"An act may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person. . . .

"Comment. . . . The rule stated in this section, . . . includes one in which the servant, although performing his employer's work, is at the same time accomplishing his own objects or those of a third person which conflict with those of the master. This is true not only as to the act done but as to the manner of doing it."

The fact that Dolly Le Sage did not direct in detail C. F. Le Sage's physical movements in operating the automobile on that trip, or otherwise exercise in fact her right of control over his operation thereof, did not render the relationship between them that of bailor and bailee instead of principal and agent. Her directions to her brother to drive her automobile to Menominee to bring his family to Milwaukee, and to use her money to pay the expense of operating it on that trip, were as explicit as was necessary to perform her promise. There was, evidently, no more occasion for more specific or detailed directions or supervision than there would have been if she had hired some chauffeur of like ability and experience to operate her car for her on that mission. The question is not whether an alleged master or principal in fact exercised supervision or control as to the details of performance by his servant or agent, but is rather whether he had the right to do so if he desired. *Allaby v. Industrial Comm.* 200 Wis. 611, 229 N. W. 193.

As under the evidence and the findings of the jury and the civil court, C. F. Le Sage must be considered the agent of Dolly Le Sage, in operating her automobile at the time of the accident, the fact that the plaintiff Gertrude Le Sage was an unemancipated minor child of his, who under the rule adopted in *Wick v. Wick,* 192 Wis. 260, 212 N. W. 787, could not maintain an action to recover from him for the damages sustained by her as the result of his negligence, does not defeat her right to recover therefor from Dolly Le Sage. As the court said in *Chase v. New Haven Waste Material Corp.* 111 Conn. 377, 150 Atl. 107, 68 A. L. R. 1497,—

"Public policy may exempt the husband or parent from an action by the wife or child directly against him for his negligent act. There is no rule of law and no public policy which would exempt the employer. The two actions are totally dissimilar. . . ."

That was quoted with approval in *Hensel v. Hensel Yellow Cab Co.* 209 Wis. 489, 245 N. W. 159.

It follows that the circuit court judgments must be reversed, and that the plaintiff in each action is entitled to recover from the defendants the amount assessed as her damages.

*By the Court.*—In Case No. 19 the judgment is reversed, with directions to enter judgment for the plaintiff's recovery from the defendants of the amount assessed as damages, with costs.

In Case No. 20 the judgment is reversed, with directions to affirm the judgment of the civil court.