## R. J. RISTAU v. LEWELLYN J. RILEY.[1]

March 10, 1950.

No. 35,028.

[1]Reported in 41 N. W. (2d) 772.

*John H. McLoone* and *Gallagher, Farrish & Sheran,* for appellant. *Regan & Regan,* for respondent.

PETERSON, JUSTICE.

Appeal from an order denying plaintiff's motion in the alternative for judgment notwithstanding the verdict for defendant upon his counterclaim or for a new trial.

The questions for decision are:

(1) Whether plaintiff is entitled as a matter of law to recover in an intersection automobile-collision case, where there is evidence to support the conflicting claims of the parties that each entered the intersection first under such circumstances that it appeared at the time that there was no imminence of a collision with the other, but the evidence is in conflict as to the distance each car was from the intersection when the other entered, when the drivers first saw each other, their respective rates of speed, and the care exercised by each driver to avoid a collision;

(2) Whether the contributory negligence of the bailee of an automobile is imputable to the bailor where the bailee is the minor child of the bailor living with him as a member of his family; and

(3) Whether, where a father permits his minor child to use his automobile to go shopping, an inference is permissible that the child is the father's servant or agent while so using the automobile.

The collision occurred after dark on March 19, 1948, in the intersection of Second and Spring streets in the city of Mankato. Plaintiff's automobile truck was driven with his permission by his 18-year-old son, who lived with him on his farm as a member of his family. Defendant personally drove his car. It is undisputed that each street is about 40 feet wide; that atmospheric conditions created no impediment to view; that the automobiles collided in the northeast quarter of the intersection; and that, after the collision, there were skid marks on the street 12 to 15 feet long apparently made by the forward movement of plaintiff's truck after application of the brakes.

According to the evidence supporting plaintiff's version, plaintiff's truck was going north on the right side of Second street at a speed of about 15 miles per hour; when it was about to enter the intersection, defendant's car was about 125 feet to the left approaching at a speed of about 35 miles per hour; after plaintiff's truck had proceeded about 8 to 10 feet north of the center of the intersection, defendant's car suddenly appeared in front of it; defendant turned his car to the left; plaintiff's truck collided with it—the left front of the truck hit the right side of the car; and both vehicles came to rest in the northeast quarter of the intersection, where the collision occurred.

The evidence in support of defendant's version was to the effect that prior to the collision he was going east on Spring street at a speed of about 20 miles per hour; that when he was about 50 feet from the intersection plaintiff's truck was about 175 feet south thereof; that after defendant had proceeded about 8 feet into the intersection plaintiff's truck was about 75 feet south thereof; that when defendant realized that a collision was about to occur he turned to the left; and that after he turned to the left and was in the northeast quarter of the intersection the front of the truck collided with the right side of his car.

While the evidence shows that plaintiff permitted his son to use his truck, the only purpose shown for such use was a trip to Mankato by the son and three friends about his age, two girls and

a boy, to do some shopping in the evening. It was not shown that the shopping was for plaintiff or that the trip was for any purpose of his. The four young people sat together in the cab seat. Plaintiff's son drove. One of the girls sat on the lap of the other boy, but this apparently did not interfere with the driver's view or his ability to handle the truck. While in Mankato they had refreshments at an ice-cream and soda fountain before starting homeward.

The trial court, in effect, instructed the jury that if defendant was negligent and plaintiff's son was not plaintiff was entitled to recover; that if both of them were negligent neither party was entitled to recover; and that if plaintiff's son was negligent and defendant was not defendant was entitled to recover. These instructions, insofar as they held plaintiff liable for his son's negligence, if any, are predicated upon the assumption that his son's negligence, if any, was imputable to plaintiff. Plaintiff contends that this was error, and further that, if such contention should be sustained, defendant should be held as a matter of law to have been negligent and liable for the damages ($550) shown by plaintiff to have been sustained by him. Defendant contends that an inference of fact was permissible that plaintiff's son was acting as his agent while using the automobile.

In Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007, we construed M. S. A. 169.20, which governs as to right of way of automobiles approaching or entering an intersection at about the same time and which provides that the driver of an automobile approaching an intersection shall yield the right of way to one which has entered the intersection from a different highway and that, when two automobiles enter an intersection from different highways at approximately the same time the driver of the one on the left shall yield the right of way to the one on the right, as meaning that, in a situation where the two automobiles would collide if each continued its course and maintained its speed, the one on the left is required to yield the right of way to the one on the right, regardless of whether the former may have entered the intersection first; and that an automobile approaching from the

right is required to yield the right of way to one approaching from the left which has reached the intersection an appreciable length of time ahead of it and is in actual possession of the intersection. We applied the rule of the Moore case in subsequent cases such as Foster v. Bock, 229 Minn. 428, 39 N. W. (2d) 862, and Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909.[2] Where the evidence is conflicting as to the factors involved, that is, as to whether the automobiles approached the intersection at approximately the same time, as to which automobile (if any) entered the intersection first, whether a collision would occur if each continued in its course and maintained its speed, and whether violation of the right-of-way rule was the proximate cause of the collision, are fact questions for the jury.

Here, the evidence was conflicting as to the facts determinative of which driver had the right of way. That being true, whether one driver or the other was negligent and whether such negligence was the proximate cause of the collision were fact questions for the jury.

■ We recently held in Jacobsen v. Dailey, 228 Minn. 201, 36 N. W. (2d) 711, that under § 170.54 (the safety responsibility act) the negligence of a bailee of an automobile is not imputable to the bailor, even where they occupy the relation of parent and child and the child lives with the parent as a member of his family. Hence, the contributory negligence of plaintiff's son, if any, was not imputable to plaintiff.

■ The existence of a parent-child relation alone does not permit an inference that one is the servant or agent of the other. In accordance with the general rule that the relation of master and

---

[2]In the Mattfeld case we said (226 Minn. 118, 32 N. W. [2d] 301):

"* * * an automobile approaching from the left is under the duty of yielding the right of way to one approaching from the right where they approach the intersection under such circumstances that if both continue at the speeds at which they are traveling a collision is likely to occur; and an automobile approaching from the right is required to yield the right of way to one approaching from the left which has reached the intersection an appreciable length of time ahead of it and is in actual possession of the intersection."

servant or that of principal and agent cannot be inferred from mere relationship, the existence of the relation of parent and child does not permit an inference that one is the servant or the agent of the other. 46 C. J., Parent and Child, §§ 160, 161, 169. Consequently, the rule is as stated in 5 Am. Jur., Automobiles, § 612:

"* * * Proof that the defendant owned the car, and that it was being driven by his child, with his consent, at the time of the accident, is not sufficient to raise the presumption that the child was acting as the agent of the father and within the scope of his authority, thereby shifting the burden upon the father to prove the contrary."

Likewise, no inference of a master-servant relationship is permissible in such a case. In the Jacobsen case, *supra,* we pointed out that the family-purpose doctrine in automobile cases was predicated upon the fiction of the existence between a parent and his child of a master-servant relation where the parent furnished an automobile for the use of his family. The same is true as to the existence of a principal-agent relationship in such cases. The fact that the purpose of the trip for which the son used the truck was to do some shopping does not alter the picture, for the reason that it was not shown that the shopping was done for plaintiff or for any purpose of his. The existence of either of the relationships mentioned can be established only by proof thereof. Proof of the existence of one of such relationships being necessary to charge plaintiff with the contributory negligence, if any, of his son, the burden of proving such fact was upon defendant as the party having the burden of proving contributory negligence. Howard v. Marchildon, 228 Minn. 539, 37 N. W. (2d) 833.

It was error to hold by the instruction that, if plaintiff's son was negligent, such negligence was imputable to plaintiff. The son's negligence was not imputable to the father in any view—neither the father's permission for the son's use of his truck nor the existence of

the parent-child relationship made it so. Because of such error, there must be a new trial.

Reversed and new trial granted.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.

