# CLARENCE FRANKLE v. HERMAN S. TWEDT.[1]

April 20, 1951.

No. 35,353.

[1]Reported in 47 N. W. (2d) 482.

*Faegre & Benson* and *Raymond Scallen,* for appellant.

*Robins, Davis & Lyons* and *Hyman H. Cohen,* for respondent.

MATSON, JUSTICE.

Appeal by defendant from an order denying his motion for a new trial.

As an outgrowth of a collision at East Seventh street and Forest avenue in St. Paul, plaintiff sued for damages to his automobile, and defendant answered and counterclaimed for damages to his vehicle. At the time of the accident, plaintiff's foster brother, Harold Schmit, was driving plaintiff's automobile and was on his

way, *pursuant to a previous understanding,* to pick up plaintiff at his place of employment. Defendant was driving his own car.

We are faced with the question whether, in the light of the evidence, the trial court erred in charging the jury in effect that, as a matter of law, the driver of plaintiff's car, Schmit, was not an agent of plaintiff, and that therefore the driver's negligence, if any, could not be imputed to plaintiff as a bar to any right of recovery which he otherwise might have against defendant. It is clear from the testimony of both plaintiff and Schmit that plaintiff permitted Schmit to use the car for the evening for the latter's personal pleasure, with the understanding, however, that he would pick up plaintiff at his place of work about 1:30 a. m. and take him home. When the time came to call for plaintiff, Schmit, who was then visiting at his fiancee's home, proceeded from her home along a route which led directly to plaintiff's place of work. While thus en route, the accident occurred about four blocks from where he had agreed to meet plaintiff. At the time, he was accompanied by his fiancee and also by his buddy, who was to be taken to his home. It is admitted that if the accident had not occurred Schmit would have called for plaintiff as agreed and that thereafter, accompanied by plaintiff, he would first have taken his buddy and his fiancee to their respective homes and would then have driven plaintiff to his home. With respect to Schmit's use of the car for the evening, plaintiff testified:

"Q. And the arrangement had been that your brother was to come out and pick you up and bring you home that night, isn't that right?

"A. That's right."

Schmit himself testified:

"A. * * * I was supposed to pick him up.

* * * * *

"Q. And then he [plaintiff] would ride with you while you took your buddy home?

"A. Yes, sir. Because I told him I would be there that time, and he expected me to be there."

■ Plaintiff contends that the trial court did not err, in that the evidence, as a matter of law, will only sustain a finding of the relationship of bailor and bailee between plaintiff and his foster brother, Schmit. It is well settled that, although pursuant to M. S. A. 170.54 any person who operates a motor vehicle upon a public street or highway, with the consent of the owner of the vehicle, is deemed the agent of the owner in case of an accident for the *sole* purpose of holding the owner liable to persons injured by reason of the driver's negligence, such negligence of the driver, *when his relation with the owner is only that of bailor and bailee,* is not imputable to the owner in an action by the latter against a third party.[2]

■ Defendant asserts, however, that the trial court erred, in that the evidence would sustain a finding that the relationship between plaintiff and Schmit, *when the collision occurred,* was that of principal and agent, and that the issue as to the character of their relationship should have been submitted to the jury. The use of the broad and inclusive terminology of *principal and agent* in cases concerning the imputation of negligence is unfortunate in the absence of an express indication as to what specific phase of the agency field is involved. See, Restatement, Agency, §§ 1 and 2, and *comments.* The negligence of all agents indiscriminately is not to be imputed to the principal. On the basis of an agency relationship, the negligence of an agent is imputed to his principal as a bar to the latter's right of recovery, in an action which he brings against a third party, *only* when the nature of the agency relationship is such that the principal would be subject to a vicarious liability as a defendant to another who may have been injured by the agent's negligence. Restatement, Torts, § 485; Prosser, Torts, §§ 55 and 62.[3] For example, the negligence of an agent who is an inde-

[2]Jacobsen v. Dailey, 228 Minn. 201, 36 N. W. (2d) 711, 11 A. L. R. (2d) 1429; Ristau v. Riley, 230 Minn. 341, 41 N. W. (2d) 772; Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945; see, Prosser, Torts, § 55; Restatement, Torts, § 489. Cf. 34 Minn. L. Rev. 57, and 49 Mich. L. Rev. 634.

[3]As to imputed negligence generally as a bar to a plaintiff's right of recovery, see Restatement, Torts, §§ 485 to 494; Prosser, Torts, §§ 55, 62

pendent contractor, with certain limited exceptions, is not imputable to his principal, in that the latter is not vicariously liable for the former's torts. Prosser, Torts, § 64; see, Restatement, Agency, § 2(3), *comments a* and *b.* As a contrary example, we have that phase of agency represented by the relationship of master and servant. A master is barred from recovery against a negligent defendant by the contributory negligence of his servant acting within the scope of his employment. Restatement, Torts, § 486; see, Jacobsen v. Dailey, 228 Minn. 201, 209, 36 N. W. (2d) 711, 716, 11 A. L. R. (2d) 1429. A joint enterprise is another illustration. Where the owner and driver of a vehicle are engaged in a joint enterprise, which though analogous to a partnership is related to agency, in that the law considers each member of the group an agent or servant of the other and holds each vicariously responsible to third persons injured by the negligence of any fellow member, the negligence of the driver is imputed to the owner. See, Jacobsen v. Dailey, *supra;* Prosser, Torts, § 65; Restatement, Torts, § 491.[4] In order properly to evaluate the evidence to determine if it will sustain a finding that a principal and agency relationship exists as a basis for imputing the driver's negligence to the owner, it is clearly necessary to have in mind which phase of agency, if any, is involved.

If, aside from the bailor and bailee relationship which arose when plaintiff permitted Schmit to use the car for the latter's personal pleasure, any principal and agency relation was created, it must have been that of master and servant. The evidence is clearly subject to the inference that Schmit's use of the car for his pleasure was, by implication at least, agreed to by plaintiff for and in consideration of Schmit's promise that he in return would perform a service for plaintiff's benefit, namely, that of calling for the owner at his place of employment to take him home  The service was that

---

to 66; 38 Am. Jur., Negligence, §§ 234 to 252; 5 Am. Jur., Automobiles, §§ 492 to 502.

[4]As to imputation of negligence in a wrongful death action or in an action for damages for loss of services, see Restatement, Torts, §§ 493, 494.

of a chauffeur for the owner's benefit, and by its very nature belongs to work characteristic of a servant. The evidence would clearly sustain a finding that the service was performed in fulfillment of a prearranged understanding or agreement and not merely *as an incidental courtesy extended by a bailee to a bailor*. It goes without saying that the owner of an automobile may agree with another that the latter may for a part of an evening have the uncontrolled use of the vehicle for his personal enjoyment as a bailee, subject to the condition that the latter, with respect to another part of the same evening, shall use the vehicle as a servant for the use of the owner and subject to the owner's right of control.

Do we, however, have the elements essential to a master-and-servant relationship? A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of such service is controlled *or is subject to the right of control* by the master. Restatement, Agency, § 2. As applied to automobiles, the difference between a mere bailment relation and that of master and servant is the distinction between a mere permissive use and a use which is subject to the control of the master and connected with his affairs. Cornish v. Kreuer, 179 Minn. 60, 228 N. W. 445; 5 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 2981. A bailment entails such a complete surrender of control by the owner that he may thereafter become a mere guest in his own automobile. Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406. The *right* of control, and not necessarily the exercise of that right, is the test of the relation of master and servant. Cornish v. Kreuer, 179 Minn. 60, 228 N. W. 445. The determinative right of control is not merely over *what* is to be done, but primarily over *how* it is to be done. Basically, it is the distinction between a person who is subject to orders as to *how* he does his work and one who agrees only to do the work in his own way. Servants are thus to be distinguished from other employed agents, inclusive of independent contractors, who contract to do something for the employer but who are not subject to any control or right of control with respect to their physical conduct in

carrying out the undertaking. Although the distinction is a fundamental and important one in the determination of tort liability (Cornish v. Kreuer, *supra*), it cannot be stated in the form of an exact definition which can be applied with certainty to the varying circumstances of each case. Prosser, Torts, § 63.

Although in the abstract the right of control is the decisive test, its decisive character in practical application fades into a twilight of uncertainty by reason of the fundamental differences in the nature of various occupations, by the varying arrangements of the parties and the circumstances of each particular case, and by such variable factors as the force of custom. Prosser, Torts, § 63; Restatement, Agency, § 220. The existence of the right of control may be inferred from a combination of factors which usually varies according to the circumstances of each case. Restatement, Agency, § 220. Thus, highly skilled cooks or gardeners who resent and even contract against interference are normally servants when regularly employed. The fact that a particular occupation may involve such technical skill that the employer is wholly incapable of supervising the details of performance does not preclude a master-and-servant status. Tetting v. Hotel Pfister, Inc. 221 Wis. 141, 266 N. W. 249. Although the work may inherently require extensive freedom of action, such freedom does not preclude a finding of a master's essential right of control. Curcic v. Nelson Display Co. 19 Cal. App. (2d) 46, 64 P. (2d) 1153. Likewise, a servant status may exist although the work is of a character which requires little, if any, supervision. Katsinas v. Colgate-Palmolive-Peet Co. 299 Ill. App. 347, 20 N. E. (2d) 127. One may be a servant though far away from the master, or though so much more skilled than the master that actual direction and control would be folly, since it is the right to control rather than the exercise of control that is the test of the relationship of master and servant. Bell v. Sawyer, 313 Mass. 250, 47 N. E. (2d) 1. As applied to motor vehicles, it has been held that, although an owner requested her brother to proceed unattended with her automobile to a distant city and return, during the course of which trip she could not possibly direct

in detail her brother's physical movements, the right of control was sufficient to render the relationship between them that of master and servant rather than that of bailor and bailee, even though the trip was in part for the brother's personal benefit. Le Sage v. Le Sage, 224 Wis. 57, 271 N. W. 369; see, Elliason v. Western Coal & Coke Co. 162 Minn. 213, 202 N. W. 485.

As applied to the instant case, the evidence sustains a finding that when the accident occurred plaintiff possessed, in the light of the previous understanding of the parties, the nature of the service, and the circumstances under which the service was to be performed, such right of control over the driver's operation of plaintiff's automobile as to identify the relation as one of master and servant. Although contrary to the implication of Cornish v. Kreuer, 179 Minn. 60, 228 N. W. 445, the relation of master and servant may be created simply by the submission of one who gives the service to the control of one who receives the service, even though there actually is no mutual contract to that effect (Restatement, Agency, § 221, *comment c*), the existence of a mutual agreement controlling, as here, the time, destination, and purpose of the trip is a significant factor. Restatement, Agency, § 228; Prosser, Torts, § 63, pp. 475, 476. As an additional basis for an inference that a right of control existed, the jury could have taken into consideration (1) that the automobile was owned by plaintiff, (2) that by the very nature of motor vehicle driving it would have been impractical to exercise any direct supervision of the car's operation, and (3) that it is the custom to permit a chauffeur, whenever convenience so dictates, to proceed unaccompanied by the owner. As a matter of fact, no greater degree of direct supervision would have existed if plaintiff had employed a regular full-time chauffeur. Restatement, Agency, § 220. Employment in terms of pay is not necessary to the creation of a master-and-servant relation. Rogge v. G. N. Ry. Co. 233 Minn. 255, 47 N. W. (2d) 475; Restatement, Agency, § 225.

Schmit was clearly acting within the scope of his employment, although when the collision occurred he was transporting his fian-

cee and his buddy for the purpose of taking them to their homes after he had called for plaintiff. The evidence, by reasonable inference, indicates that his duty as a servant created the necessity for his travel. It is immaterial that he may have served or accomplished a purpose of his own.

"An act may be within the scope of employment, although done in part to serve the purposes of the servant or of a third party." Restatement, Agency, § 236.

As a matter of tort law,[5] if a servant in the use of a motor vehicle combines his own business with that of the master and is not using the vehicle exclusively for his own ends, but is using it at the same time for his master's business in the service for which he was employed, the master is nevertheless liable for the servant's negligence.[6] Where a servant is allowed by his master to combine his own business with that of the master, or even to attend to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured by his negligence. 1 Shearman and Redfield, Negligence (Rev. ed.) § 155. If, as distinguished from a slight deviation,[7] a servant, however, totally abandons his master's business for a purpose exclusively his own, or if his movements

---

[5]The phrase "scope of employment," as used in the field of torts to circumscribe the area of vicarious liability to third persons, is to be sharply differentiated from the workmen's compensation act phrase "arising out of and in the course of employment." Riesenfeld-Maxwell, Modern Social Legislation, pp. 139, 234-235. Compensation acts are *sui generis* and belong to a fundamentally different field of litigation. See, Olson v. Trinity Lodge, 226 Minn. 141, 32 N. W. (2d) 255; Riesenfeld-Maxwell, *Id.* p. 139.

[6]Marcel v. Cudahy Packing Co. 186 Minn. 336, 243 N. W. 265; Vogel v. Nash-Finch Co. 196 Minn. 509, 265 N. W. 350; National Battery Co. v. Levy (8 Cir.) 126 F. (2d) 33; Rahn v. Singer Mfg. Co. (C. C.) 26 F. 912, affirmed, 132 U. S. 518, 10 S. Ct. 175, 33 L. ed. 440; Restatement, Agency, § 236, *comments a* and *b*.

[7]See, Fostrom v. Grossman, 161 Minn. 440, 201 N. W. 929.

are not actuated to any appreciable extent by his master's business, the master is not liable for his negligence.[8]

■ Where, as here, the evidence as to the existence of the relationship of master and servant is conflicting or admits of more than one inference, the question thereby raised is one of fact for the jury. Only when the facts are undisputed or admit of only one inference may the issue as to the nature of the relationship of the parties be determined by the court as a matter of law.[9] The trial court's error was prejudicial to defendant, and there must be a new trial. We therefore deem it unnecessary to pass upon the other assignments of error.

Reversed.

LORING, CHIEF JUSTICE (concurring specially).

Since defendant is asking only for a new trial and is contending only that the case was for the jury on whether Schmit was, at the time of impact, the servant of plaintiff, I agree that there should be a reversal; but I regard the evidence of a master-servant relationship at the moment of impact as conclusive, not that it should be submitted to a jury. The evidence is all one way and undisputed. There was no conflict as to the controlling facts nor as to the inferences that might be drawn therefrom.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.

[8]Loucks v. R. J. Reynolds Tobacco Co. 188 Minn. 182, 246 N. W. 893; National Battery Co. v. Levy (8 Cir.) 126 F. (2d) 33; 1 Shearman and Redfield, Negligence (Rev. ed.) §§ 155 to 157; compare Loucks v. R. J. Reynolds Tobacco Co. *supra,* with Marcel v. Cudahy Packing Co. 186 Minn. 336, 243 N. W. 265. See, Restatement, Agency, § 236, *comments* a and b.

[9]Bayerkohler v. Clara City Farmers Elev. Co. 189 Minn. 22, 248 N. W. 294; Modrinich v. Loyal Order of Moose, 178 Minn. 382, 227 N. W. 207; Molden v. M. St. P. & S. S. M. Ry. Co. 160 Minn. 471, 200 N. W. 740; Langworthy v. Owens, 116 Minn. 342, 133 N. W. 866; Restatement, Agency, § 220, *comment b.*