Potash *v.* Bonaccurso, Appellant.

Argued September 30, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*J. Webster Jones,* for appellant.

*Edward Davis,* for appellee.

OPINION BY ERVIN, J., November 16, 1955:

On October 20, 1952 a compensation agreement was entered into between claimant, a ritual slaughterer of animals, and defendant, who was engaged in the meat packing business, in which the defendant's insurance carrier joined, providing for the payment of certain benefits to the claimant for an accident and resulting injury described as "slipped on floor while slaughtering steer, tendonitis of the shoulders". Subsequently, on January 13, 1953, the defendant and his insurance

carrier filed a petition for termination of the aforesaid agreement, averring that the said agreement was entered into under a mistake of fact and of law in that the relationship of master and servant did not exist at the time of entering into the agreement. The referee's action in dismissing the petition was sustained by the Workmen's Compensation Board but the record was remanded by the board for the purpose of obtaining impartial medical testimony on the extent of claimant's disability. In the subsequent rehearing the referee found as a fact "That the above mentioned COMPENSATION AGREEMENT was entered into under a mistake of fact and of law in that the relationship of master and servant did not exist at the time of entering into said Agreement." However, the referee found "That the employer had the right to exercise other control over the claimant" and concluded that claimant was entitled to the payment of compensation based upon a 60% partial disability and entered an award accordingly. On appeal, the board concluded that a master-servant relationship existed between the claimant and defendant on September 16, 1952, the date on which claimant was injured, and affirmed the award of the referee. On appeal by the defendant and his insurance carrier, the Court of Common Pleas No. 1 of Philadelphia County affirmed the board and entered judgment in favor of claimant. From this judgment the defendant's insurance carrier has appealed.

The claimant is a shochet,[1] which is the Hebrew name for a ritual slaughterer of cattle, according to

---

[1] Described as follows in Words and Phrases—"Shochet": "Shochtim" is the plural of "Shochet", who is a Hebrew religious official, certified in writing by one or more rabbis as being qualified to slaughter animals in accordance with the ritual requirements and precepts of the Hebrew Orthodox faith. *Mayer Bros. Poultry Farms v. Meltzer*, 80 N.Y.S. 2d 874, 877, 274 App. Div. 169.

ancient Jewish law and tradition. His duty is to slaughter the cattle according to such law and determine whether or not it is ritually fit for consumption under Jewish law. In doing this work the shochet performs a religious duty. If the meat is found to be so fit, it is called in Hebrew, "kosher," meaning ritually proper for food according to Jewish law, for those who observe the Jewish dietary laws. The claimant, a rabbi, did all the slaughtering for the defendant, who is engaged in the slaughtering or meat packing business, selling to the trade both kosher and non-kosher meat. About 75% of the cattle slaughtered by the claimant is found to be kosher and the meat thereof sold to the kosher trade, and the remaining 25% is sold to the non-kosher trade, if it passes the required government inspection. It was while engaged in slaughtering for the defendant that claimant slipped on the floor, striking his right shoulder area. As a result of the injury thus sustained claimant, upon medical examination, was found to be 60% disabled.

The sole question involved in this case is whether at the time he was injured on September 16, 1952, the claimant, Hyman Potash, was an employe of the defendant, Saverio Bonaccurso, within the purview of the Workmen's Compensation Act.

Where, as here, the facts are not in dispute, the question whether claimant was an employe of defendant is a question of law. *Cookson v. Knauff*, 157 Pa. Superior Ct. 401, 43 A. 2d 402.

Appellant contends that the relationship of master and servant does not exist in this case because the alleged employer could not possibly have any control over the claimant, a ritual slaughterer, in the matter of his determination of which cattle slaughtered resulted in producing kosher meat.

Under §§103 and 104 of the Workmen's Compensation Act of 1915, as re-enacted and amended, 77 PS §§21, 22, the terms "employer" and "employe" are synonymous with "master" and "servant." *Harris et al. v. Seiavitch,* 336 Pa. 294, 9 A. 2d 375.

Practically all the usual indicia of an employer-employe relationship are present in this case. They are well summarized in the opinion by KUN, J. of the court below as follows: "The record shows that the claimant has been employed by the defendant as slaughterer for cattle for some 15 years, has been reporting every morning for work at 7 o'clock, and remains at the defendant's place of business as long as there is any slaughtering to do. He was paid on a piece work basis but with a minimum guarantee of $50.00 a week. He was paid for holidays, and the usual deductions made from his pay for wage and income tax, social security, welfare plan, etc. He had vacations with pay. He worked under the supervision of the defendant's son and had a 'boss' who determined the animals to be slaughtered. Defendant testified that the claimant worked under the same conditions as other employees as regards holidays, deductions, vacations, etc." However, the vital test in determining whether a workman is a servant of the person who engages him for the work is whether he is subject to the latter's control or right of control not only with regard to the work to be done but also with regard to the manner of performance. *Felten v. Mellott,* 165 Pa. Superior Ct. 229, 67 A. 2d 727; *Gadd v. Barone,* 167 Pa. Superior Ct. 477, 75 A. 2d 620. See *Greap v. Oberdorff,* 178 Pa. Superior Ct. 153, 113 A. 2d 339. On the basis of the undisputed facts in this case it clearly appears that the defendant not only had the right to control but also exercised control over the claimant in his slaughtering work. The animals were obtained by de-

fendant, he determined the number to be slaughtered and supervised distribution to the trade. The only aspect of claimant's activities which were not subject to the control of the defendant as to the manner of its accomplishment was the determination by claimant of which animals slaughtered were kosher and which were non-kosher. It is obvious that defendant could not control claimant in this respect since the religious nature of the duties precludes the assertion of any control, but the inability to control is not inconsistent with the existence of a right to control. The fact that claimant's performance of his religious duties as a shochet necessarily places him outside the scope of control of defendant in that respect does not preclude him from having the status of an employe. As stated in Restatement, Agency, §223, comment a: "The fact that the law requires an examination and a certain standard of skill does not prevent the relationship of master and servant from arising. . . . Even in the case of attorneys and physicians there may be the master and servant relationship, as where a firm of attorneys employs an attorney as a member of the office staff." Also pertinent and applicable here is the following statement in *Frankle v. Twedt*, 234 Minn. 42, 47 N.W. 2d 482 at p. 487: "Although in the abstract, the right of control is the decisive test, its decisive character in practical application fades into a twilight of uncertainty by reason of the fundamental differences in the nature of various occupations, by the varying arrangements of the parties and the circumstances of each particular case, and by such variable factors as the force of custom. Prosser, Torts, §63; Restatement, Agency, §220. The existence of the right of control may be inferred from a combination of factors which usually varies according to the circumstance of each case. Restatement, Agency, §220. Thus, highly

skilled cooks or gardeners who resent and even contract against interference are normally servants when regularly employed. *The fact that a particular occupation may involve such technical skill that the employer is wholly incapable of supervising the details of performance does not preclude a master and servant status.* Tetting v. Hotel Pfister, Inc., 221 Wis. 141, 266 N.W. 249." (Emphasis added)

Where, as here, the Jewish law and tradition requires that meat to be consumed by those of the Hebrew faith be slaughtered by one trained and skilled in the work and licensed to perform such religious duty, the inability of an employer to control the shochet in the performance of his religious duties, will not prevent him from having the status of an employe within the meaning of the Workmen's Compensation Act, especially where, in all other phases of his employment, the employer has the right to control him in the performance of his duties and the material elements of an employer-employe relationship are present.

Although extensive research failed to disclose a case wherein it was held that a shochet or shochtim were employes within the meaning of a workmen's compensation act, in cases arising under the National Labor Relations Act which, as amended by the Labor Management Relations Act of 1947, 61 Stat. 137, 29 U.S.C.A. §152(3), specifically excluded from the definition of "employee" any individual having the status of an independent contractor, it has been held that shochtim were employes despite the religious ritual attending their duties, where the employer paid their salaries and extended to them the same privileges as to other employes. *Swift & Co.,* 57 N.L.R.B. 1411, *Wilson & Co. Inc.,* 68 N.L.R.B. 416.

In the instant case we are also constrained to hold that claimant is an employe of the defendant in view

of the following statement quoted by Chief Justice MAXEY in *Thomas v. Bache et al.,* 351 Pa. 220, 223, 40 A. 2d 495: "The rule of policy is: '. . . neither the compensation authorities nor the courts should be solicitous to put claimants in that position [of an independent contractor] when a reasonable view of the evidence warrants a finding that the injured person was an employee': Gailey v. State Workmen's Insurance Fund, 286 Pa. 311, 314."

Judgment affirmed.